UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

ROBERT CAMPBELL,                                     :
                                                     :
                          Plaintiff,                 :        CASE NO.: _____
                                                     :
            -against-                                :        COMPLAINT
                                                     :
DIPLOMAT PHARMACY, INC., BRIAN                       :        JURY TRIAL DEMANDED
GRIFFIN, PHILIP R. HAGERMAN,                         :
BENJAMIN WOLIN, REGINA BENJAMIN,                     :
DAVID C. DREYER, KENNETH KLEPPER,                    :
and SHAWN C. TOMASELLO.                              :
                                                     :
                          Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X


## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Robert Campbell ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Diplomat Pharmacy, Inc. ("Diplomat" or the "Company") and the members of the Company's executive officers and board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Diplomat, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"). Plaintiff's claims arise in connection with the tender offer by UnitedHealth Group Incorporated and its affiliates ("UnitedHealth").

2.      On December 9, 2019, Diplomat entered into an Agreement and Plan of Merger (the "Merger Agreement") with UnitedHealth and Denali Merger Sub, Inc. ("Merger Sub", a direct wholly owned subsidiary of UnitedHealth).  Pursuant to the Merger Agreement, Merger Sub will be merged with and into Diplomat, with Diplomat continuing as the surviving entity (the "Tender Offer").

3.      Under the terms of the Merger Agreement, each stockholder of Diplomat common stock will be entitled to receive $4.00 in cash per share of common stock (the "Offer Price").

4.      On January 9, 2020, in order to convince Diplomat's public common stockholders to tender their shares, Defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.

5.      In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by Diplomat's financial advisor, Foros Group L.L.C. ("Foros"), in support of its fairness opinion; and (ii) whether the certain confidentiality agreements signed with potential bidders contain "don't ask, don't waive" ("DADW") clauses and whether those clauses were waived.

6.      The Tender Offer is scheduled to expire at 12:01 a.m. (New York City time) on February 7, 2020 (the "Expiration Time"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Tender Offer

2

unless and until the material information discussed below is disclosed to Diplomat's public common stockholders sufficiently in advance of the special meeting of the Company's stockholders or, in the event the Tender Offer is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Diplomat's common shares trade on the NYSE, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of Diplomat common shares.

11.     Defendant Diplomat Pharmacy, Inc. is a Michigan corporation that maintains its principal executive offices at 4100 S. Saginaw Street, Flint, Michigan 48507. Diplomat's common shares are traded on the NYSE under the ticker symbol "DPLO."

12.     Defendant Brian Griffin is, and has been since June 2018, the Chairman of the Board of Directors and Chief Executive Officer of Diplomat.

13.     Defendant Philip R. Hagerman is, and has been at all relevant times, a director of the Company. Furthermore, he has served as Chairman Emeritus since January 2018 and previously served as Diplomat's Chief Executive Officer, a director, and the Chairman of the Board of Directors since 1991.

14.     Defendant Benjamin Wolin is, and has been at all relevant times, a director since October 2015. He was appointed independent lead director of the board effective June 4, 2018, having previously served in this role from February 2017 to January 2018. He serves as the chair of the Nominating and Corporate Governance Committee and is a member of the Audit Committee of Diplomat.

15.     Defendant Regina Benjamin is, has been at all relevant times, a director since April 7, 2017. She is a member of the Audit Committee, the Compensation Committee and the Nominating and Corporate Governance Committee of Diplomat.

16.     Defendant David C. Dreyer is, and has been at all relevant times, a director since September 15, 2014. He serves as the Chair for both the Audit Committee and the Compensation Committee of Diplomat.

17.     Defendant Kenneth Klepper is, and has been at all relevant times, a director since December 16, 2014.

18.     Defendant Shawn C. Tomasello is, and has been at all relevant times, a director since October 6, 2015 and is a member of the Compensation Committee and the Nominating and Corporate Governance Committee of Diplomat.

19.     The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Diplomat, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Tender Offer**

20.     Diplomat operates as an independent specialty pharmacy and has locations throughout the United States. The Company primarily focuses on medication management programs for individuals with complex chronic diseases, including oncology, immunology, hepatitis, multiple sclerosis, specialized infusion therapy, and various other serious or long-term conditions. The company was founded in 1975 and is headquartered in Flint, Michigan.

21.     UnitedHealth operates as a diversified health care company in the United States. It operates through four segments: UnitedHealthcare, OptumHealth, OptumInsight, and OptumRx. UnitedHealth was incorporated in 1977 and is based in Minnetonka, Minnesota.

22.     On December 9, 2019, Diplomat issued a press release announcing the Tender Offer, which stated in relevant part:

> **Diplomat, Optumrx Combining to Advance Access to Specialty Pharmacy Care and Infusion Services, Improve Health Outcomes**
>
> *Combination will provide enhanced specialty and infusion services for patients; help manage growth in high-cost specialty pharmaceuticals*

EDEN PRAIRIE, Minn. and FLINT, Mich. (December 9, 2019) – OptumRx, the pharmacy care services business of Optum, and Diplomat, a provider of specialty pharmacy and infusion services, are combining. The agreement calls for the acquisition of Diplomat's outstanding common stock for $4.00 per share through a cash tender offer and assumption of outstanding debt.

Diplomat brings expertise in managing specialty medications that treat patients with complex diseases, such as oncology and immunology, and provides specialized infusion therapies offered in convenient and clinically appropriate settings in all 50 states and Washington, D.C. The combination will support improved health outcomes and reduced prescription drug costs while helping lower the overall total cost of care.

"With its focus in specialty and infusion services, Diplomat has a proven track record of solving the unique challenges facing patients with complex health care needs," said John Prince, chief executive officer of OptumRx. "This combination will expand the innovative specialty pharmacy and infusion solutions OptumRx can offer to the consumers and clients we serve, helping ensure people get the right medications and services at the right time, in the right setting."

The transaction was unanimously approved by the Board of Directors of Diplomat.

"Our Board of Directors carefully considered a variety of strategic options and concluded that joining OptumRx is in the best interests of our shareholders, employees and the clients and patients we serve," said Brian Griffin, chairman and chief executive officer of Diplomat.

"Since co-founding the company in 1975 with my father, I have had the honor of helping to transform Diplomat into a specialty pharmacy services leader," said Diplomat co-founder and chairman emeritus Philip R. Hagerman, RPh. "This combination will create significant value for Diplomat's specialty pharmacy consumers and clients, and I look forward to the combined companies' future success."

Mr. Hagerman and certain persons and entities affiliated with Mr. Hagerman own approximately 23% of the outstanding common stock of Diplomat, and have agreed to tender their shares in connection with the offer.

**About Diplomat**

Diplomat, through its specialty pharmacy and infusion services, helps people with complex and chronic health conditions in all 50 states and

Washington, D.C., partnering with payers, providers, hospitals, manufacturers, and more. Diplomat opened its doors in 1975 as a neighborhood pharmacy with one essential tenet: "Take good care of patients and the rest falls into place." Today, that tradition continues — always focused on improving patient care. For more information, visit diplomat.is.

**About OptumRx**

OptumRx is an innovative pharmacy care services company managing the prescription drug benefits of commercial, Medicare, Medicaid and other government health plans, as well as those of employers and unions through a national network of 67,000 community pharmacies. OptumRx is part of Optum, a leading information and technology-enabled health services business with more than 135,000 people worldwide dedicated to making the health system work better for everyone. Optum is part of UnitedHealth Group (NYSE:UNH). Visit www.optum.com for more information about OptumRx.

**The Recommendation Statement Omits Material Information**

23.     On January 9, 2020, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to determine whether to tender their shares.

24.     First, the Recommendation Statement fails to disclose crucial information concerning the summary of Foros' financial analyses, used in creating its fairness opinion.

25.     With respect to Foros' *Historical Trading Multiples Analysis*, the Recommendation Statement fails to disclose the Company's next twelve months Adjusted EBITDA and share based compensation, utilized by Foros in its analysis. Information explaining the key inputs and assumptions utilized by a financial advisor is material to shareholders, so that they may judge for themselves if such calculations were appropriate. *See, e.g. In re Pure Res., Inc. S'holders Litig.*,

808 A.2d 421, 449-450 (Del. Ch. 2002) (emphasizing that "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely" and that "[t]he real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttress that result.").

26.     With respect to Foros' *Discounted Cash Flow Analysis* for Diplomat, the Recommendation Statement is materially misleading and incomplete because it fails to disclose: (i) the terminal values for the Company; (ii) Foros' basis for applying perpetual growth rates of 2.5%, 3.0%, and 3.5% to the unlevered free cash flows; and (iii) the individual inputs and assumptions underlying the discount rate of 10.5%.

27.     These key inputs are material to Diplomat stockholders, and their omission renders the summary of Foros' DCF analysis incomplete and misleading. As one highly respected law professor explained regarding these crucial inputs, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in

light of the conflicted nature of the investment banks who often provide
these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Diplomat
stockholders cannot evaluate for themselves the reliability of Foros' *Discounted Cash Flow
Analysis*, make a meaningful determination of whether the implied equity value per share ranges
reflect the true value of Diplomat or was the result of an unreasonable judgment by Foros, and
make an informed decision regarding whether to tender their shares.

28.     Second, the Recommendation Statement indicates that Diplomat and multiple
parties entered into confidentiality agreements. Yet, the Recommendation Statement fails to
disclose whether those confidentiality agreements contained 'don't ask, don't waive' ("DADW")
clauses.

29.     This is especially important considering that in late 2018, the Board had offers on
the table ranging between $24.00-$26.00 per share. Proxy at 18. Multiple parties were involved,
and confidentiality agreements were signed which included standstill provisions. *Id.* If those
confidentiality agreements contained DADW restrictions, then those parties may have been
precluded from making competing offers. Considering the Board ultimately accepted an Offer
Price of $4.00 per share, this is critical information for shareholders.

30.     Likewise, in mid-2019, the Board executed confidentiality agreements with 28
potential counterparties, again whether those agreements contained DADW restrictions, and
whether those restrictions were waived or remain in effect is omitted from the Proxy. Proxy at 20.

31.     Accordingly, the express communication of the existence of such provisions is
material to Diplomat shareholders, as it bears directly on the ability of parties that expressed
interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the
existence of DADW provisions creates the false impression that any of the parties who signed non-

disclosure agreements could have made a superior proposal. If those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by (i) breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement during the Go-Shop Period, which if action was done, is omitted from the Recommendation Statement. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information. Thus, the omission of this material information renders the descriptions of the non-disclosure agreements the Company entered into in the Background of the Merger section of the Recommendation Statement misleading.

32.     In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's stockholders, Plaintiff will be unable to make an informed decision regarding whether to tender his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### COUNT I

**Against All Defendants for Violation of Section 14(e) of the Exchange Act**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not

misleading…" 15 U.S.C. §78n(e).

35.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36.     The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer and the intrinsic value of the Company.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information

identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

39.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

40.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

## COUNT II

### Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

43.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may

prescribe as necessary or appropriate in the public interest or for the protection of investors.

44.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the

Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

45.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's

directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

46.     The omission of information from a recommendation statement will violate Section

14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted

information.

47.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because

it omits material facts, including those set forth above, which omissions render the

Recommendation Statement false and/or misleading.  Defendants knowingly or with deliberate

recklessness omitted the material information identified above from the Recommendation

Statement, causing certain statements therein to be materially incomplete and therefore misleading.

Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material

information in connection with approving the Tender Offer, they allowed it to be omitted from the

Recommendation Statement, rendering certain portions of the Recommendation Statement

materially incomplete and therefore misleading.

48.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

**Against all Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Diplomat within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Diplomat, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Recommendation Statement contains the

unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing the Recommendation Statement.

53.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Tender Offer, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.    Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.    Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.    Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 17, 2020   **MONTEVERDE & ASSOCIATES PC**

         _/s/ Juan E. Monteverde_
         Juan E. Monteverde (JM-8169)
         The Empire State Building
         350 Fifth Avenue, Suite 4405
         New York, NY 10118
         Tel: (212) 971-1341
         Fax: (212) 202-7880
         Email: jmonteverde@monteverdelaw.com

         _Attorneys for Plaintiff_